### STATE
v.
### Ralph DeMASI.
### STATE
v.
### Lawrence M. LANOUE.
Nos. 78–35–C.A., 79–36–C.A.

Supreme Court of Rhode Island.

Dec. 7, 1982.

Dennis J. Roberts II, Atty. Gen., for plaintiff.

John Tramonti, Jr., Providence, Griffin & Higgins, Kirk Y. Griffin, Geline W. Williams, Boston, Mass., for defendants.

## OPINION

KELLEHER, Justice.

This is the epilogue to the DeMasi/Lanoue saga of Fourth Amendment challenges to certain evidence introduced at the trials of these two defendants. At this final juncture, the defendant Lawrence M. Lanoue (Lanoue) is once again before us seeking relief from his conviction of breaking and entering in the nighttime. He asks us to issue a "completed decision" with regard to the opinion rendered on the consolidated appeals in *State v. DeMasi,* R.I., 448 A.2d 1210 (1982). That opinion was issued in response to a United States Supreme Court directive compelling this court to reconsider the holding in its earlier opinion of *State v. DeMasi,* R.I., 419 A.2d 285 (1980). 452 U.S. 934, 101 S.Ct. 3072, 69 L.Ed.2d 948. There, Lanoue's and DeMasi's appeals were sustained and their convictions vacated because a majority of this court found that certain evidence introduced at trial should have been suppressed. The majority ruled that the evidence did not support a reasonable suspicion to justify the stop of Lanoue's motor vehicle. However, after reconsideration in the light of the totality-of-circumstances test enunciated in *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), this court rejected the unlawful-detention arguments and reinstated the convictions.

In our 1980 opinion, it was unnecessary for us to reach Lanoue's alternate Fourth Amendment claim challenging the veracity of the affidavit supporting the search warrant of his vehicle. He had argued at his suppression hearing, which took place in October of 1978, that the search warrant should have been voided and the fruits of that search excluded under the standard set forth in *Franks v. Delaware,* 438 U.S. 154,

98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This argument was rejected by the hearing justice. Because we have since decided the unlawful-detention issue in the state's favor, we have now agreed to consider Lanoue's alternate contention.[1]

At dawn on October 8, 1974, the Pawtucket police discovered that a jewelry manufacturer, Regina Manufacturing Company (Regina), had been burglarized. Earlier that same morning, while on motorized patrol in the general area of the burglary, Patrolman Thomas Calabro had stopped a suspicious-looking 1968 Mercury sedan. The car and its occupants[2] were subsequently taken to the police station. Several hours later, Lieutenant Norman Moreau, the head of the Pawtucket detective division at the time, authored an affidavit for a search warrant to inspect the Mercury for evidence of criminal conduct.

Moreau's affidavit was based upon information given to him by several sources; Calabro was not among them. Moreau was advised by Sergeant Haberle, the night-shift officer to whom Calabro reported, that Calabro suspected that the Mercury's occupants had been involved in criminal activity that morning. Haberle told Moreau that Calabro based his suspicion on his observation that the car's back end was heavily laden and so low to the ground that sparks flew out when its bottom banged a set of railroad tracks. Haberle also reported to Moreau that Calabro said the car was being driven in an erratic and elusive manner and that Calabro had identified DeMasi, one of the passengers in the Mercury, as an individual wanted by law-enforcement authorities.

Other sources Moreau heard from that morning included Detective Joseph Mello, to whom Moreau assigned the case, and Detective John Donovan of the Pawtucket Identification Bureau. Mello related his findings to him after viewing the car, interviewing the suspects, and advising them of their rights. Donovan spoke to him after initially investigating the break at Regina. Moreau compiled the affidavit in question, relying upon these officers' reports, the defendant's criminal records obtained on request from the National Crime Information Center (NCIC), and his personal knowledge of DeMasi's criminal background.

At the suppression hearing, Calabro testified that he in fact did not recognize any of the Mercury's occupants when he pulled it over, nor was he aware of any outstanding arrest warrants until the NCIC report was radioed back to him. The record reveals that DeMasi was actually identified by Officer Daniel Haynes, who assisted Calabro with the arrest. Moreover, Sergeant Haberle later verified this preliminary identification at the police station. References made in the affidavit to the effect that the car had been heavily laden, sprayed a shower of sparks as it hit the rail, and appeared to be taking elusive action by driving down several side streets were corroborated by Calabro.

■ Lanoue contends that Moreau prepared his affidavit with false information and that consequently the integrity of the search warrant was flawed. Particularly objectionable to Lanoue are the alleged misrepresentations to Moreau that Calabro identified DeMasi, knew of his record, and characterized the car's movements as erratic and elusive. Under *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978), a search warrant must be voided and the fruits of the search excluded if the defendant proves by a preponderance of the evidence that the affiant included in the affidavit supporting the warrant false statements that were made knowingly and intentionally or with reckless disregard for the truth. However, if perjury or reckless disregard is established with regard to certain statements, the war-

---

1. We are not unmindful of the fact that Lanoue failed to raise the "Franks" issue in his petition to reargue, which we denied on September 9, 1982. This failure is an indication to us that we were not alone in overlooking this issue.

2. Eventually identified as Lanoue, the driver; DeMasi, the front-seat passenger; and Edward Sitko, the back-seat passenger, who was using the alias, Robert Reilly.

rant is still valid if on its face the affidavit's remaining content is sufficient to establish probable cause. *See also State v. Roddy,* R.I., 401 A.2d 23, 29 (1979).

The justice presiding at the suppression hearing applied the standard set forth in *Franks* just three months precedent to the facts before him. He found that several representations made in the affidavit differed from the testimony of the witnesses. However, he ruled that none of these statements rose to the level of falsity and reckless disregard for the truth required by *Franks* to invalidate a search warrant. This ruling was predicated upon the fact that Moreau never spoke directly with Calabro and that, therefore, Moreau was merely relating in the affidavit information that he reasonably believed to be true. The motion justice further found that the discrepancies, when set aside, did not invalidate the existence of probable cause. Specifically, he was of the opinion that probable cause to issue the warrant was supported by the fact that Calabro stopped a heavily laden vehicle at 4 a.m. in an industrial area in close proximity to a location where a burglary of precious metals was later discovered. Such probable cause was further buttressed by Moreau's knowledge that Lanoue and DeMasi were known criminals with previous records of similar criminal activity.

In reviewing the denial of a motion to suppress, "we must view the evidence in the light most favorable to the state and apply the clearly erroneous standard in assessing the motion justice's action." *State v. Roddy,* R.I., 401 A.2d 23, 30 (1979); *State v. Leavitt,* 103 R.I. 273, 290, 237 A.2d 309, 318 (1968). In applying the standard to the case at bar, we cannot say that the determination of the motion justice was clearly erroneous. The record supports the justice's finding that Lanoue failed to prove by a preponderance of the evidence that the affidavit in support of the search warrant resulting in the seizure of 500 pounds of stolen gold and silver findings contained false statements by Moreau which were made knowingly and intentionally or with reckless disregard for the truth.

Moreau authored an affidavit for a search warrant of a vehicle already in police custody pursuant to an investigation of the defendants' suspicious activity. The information available to Moreau concerning the identity of the car's occupants was accurate at the time he prepared the affidavit insofar as it was conveyed to him by the other officers. For purposes of our review, this is the only period that is germane to the issue raised by Lanoue. Our reading of the record convinces us that Moreau never attempted to beguile the magistrate who signed the warrant by making recklessly false statements or intentional misrepresentations in his affidavit. Consequently, we are in agreement with the hearing justice's decision that denied Lanoue's motion to suppress.

For the reasons stated above, the order previously entered in *State v. DeMasi,* R.I., 448 A.2d 1210 (1982), is hereby reconfirmed.

WEISBERGER, J., did not participate.